PORCHIA *v.* STATE.

Cr. 4100 120 S. W. 2d 700.

Opinion delivered October 31, 1938.

*A. L. Brumbelow,* for appellant.

*Jack Holt,* Attorney General, *Jno. P. Streepey,* Asst. Atty. General, for appellee.

GRIFFIN SMITH, C. J. Appellant, a negro, was convicted of the crime of murder in the first degree. He admitted having killed Dale McClurkin, a white man. Arraignment was waived. After a plea of not guilty had been entered and the jury selected, appellant changed such plea to "guilty of murder," and threw himself upon the mercy of the court.

Appellant's victim operated the Palace Lunch Room in Stevens. The deceased's daybook was introduced as an exhibit to personal testimony of a state witness. It showed that appellant was indebted to McClurkin in the sum of $1.40, thirty cents of which was for beer purchased April 11, 1938.

On the Magnolia road, near the outskirts of Stevens, there is a grocery store and service station, owned by Winston Walker, but operated by George Smith. "Short orders" are served, and there is music and dancing. That part of town is called "Nigger Hill."

Douglas Morgan, who operates a service station, grocery store, and soft drink stand across the road from Walker's establishment, testified that McClurkin came to his place about twelve o'clock the night of the killing.

Russell Lane, state witness, testified that he went to John Morgan's place about nine o'clock and remained until one o'clock, or half past one, then went to George Smith's place. He said: "While I was there I caught hold of Clayton Porchia's [appellant's] arm, and he said, 'Turn my arm loose, white folks; I don't play that way.' About two o'clock Dale McClurkin came by to take us home, and passed Clayton Porchia and said, 'There's a boy who owes me some money.' He got out of his car and walked over to where Clayton was, and Clayton stabbed him. Dale fell back and said, 'Boys, he got me.'"

On cross-examination the witness testified that he and Ed Landon were either at Morgan's place or on Nigger Hill from nine o'clock until one o'clock or later, drinking beer and playing the Victrola. McClurkin drank several bottles of beer with them. Witness left with Landon, walking in the direction of Stevens. McClurkin, in his car, picked them up "near the mill," and they proceeded "up the highway toward the Magnolia service station." They then turned and started to McClurkin's home. They passed a group of negroes and "stopped in front of them."

"Q. Is it not a fact that McClurkin stopped the car and asked the Fields negro if he wanted to ride? A. Yes, sir. Q. He did not want to ride, and you went on to the station and then came back? A. Yes, sir. We went across the bridge and stopped, and that is where it happened. They were all on that street—Clayton Porchia, the Fields boys, and the Manning negro. We went just a little piece past them; I don't know how far it was. Q. As a matter of fact, there are just a few things you want to know. A. Yes, sir. Q. You stopped then and got out? A. Yes, sir. Q. You ran after the boy, didn't you? A. Yes, sir."

Ed Landon, witness for the state, testified: "I am a farmer and live three miles from Stevens. I was at John Morgan's place the night of the killing. I saw Clayton

Porchia, Melvin Fields, and 'Toots' Fields leave Morgan's place about the time I did. I left with 'Shorty' [Lane]. We went down the road and Dale [McClurkin] picked us up in his car. We passed the negroes, then stopped. [McClurkin] asked one of the Fields boys to get in the car. We then went down the street and turned around and came back. Dale said that he was going to wait—that 'that boy' owed him some money. We stopped the car and he got out. About that time we heard a racket and struggle. Then Dale ran around the car and staggered and fell. I did not hear either one say a word —it happened right now, about eight feet from the car.''

Beatrice Johnson, state witness, testified that she was at the negro honky-tonk; that she was in the crowd of negroes that McClurkin stopped several times, but had turned off a side street before the tragedy occurred.

Appellant testified that he was 21 years of age and lived with his parents on a farm near Stevens. At Morgan's place on the night of the tragedy, or at Smith's place, he saw a girl called Fannie, and also saw McClurkin, and talked with them. Fannie was McClurkin's cook. McClurkin was with several colored boys, and was giving them some whiskey. Appellant asked for a drink, and was refused. He said: ''When the crowd began to break up I caught up with several girls. Fannie was in the crowd. They said they wanted to be alone. Shorty [Lane] came up behind me and caught my arm. I told him not to do that. I was then told not to say anything, because Dale McClurkin had a gun and would kill me. They told me to go home. As I went, the crowd I was with was overtaken by McClurkin in his car. He stopped the car, got out, and asked, 'Where is that girl?' He asked Toots to get in the car. . . . The car stopped us again, and later on stopped again in front of us. As I approached the car 'Shorty' came up to me and asked where I was going. I told him 'home.' He told me I wasn't, and fell as if to catch my feet. At that time McClurkin knocked me down, and I cut him. I had my knife open because I was afraid of them. I had no malice against them; I knew them and liked them.''

Appellant concealed himself, following the killing, but the next day he sent word to the sheriff, and was taken into custody.

The only question to be determined is whether the appellant's act was "wilful, deliberate, malicious and premeditated." If these elements were present, the crime would constitute murder in the first degree.

The strongest testimony on behalf of the state is that of Russell Lane, who says that McClurkin, while driving his car, recognized appellant as one who owed him an account; that McClurkin walked over to where appellant was, and that appellant stabbed him. But the effect of this testimony is considerably changed on cross-examination. McClurkin's conduct in passing and repassing the group of negroes is admitted by the witness. McClurkin had been in an environment where his presence was not to have been expected, and no reason for the association is given. McClurkin was drinking beer with Landon and Lane, either at Morgan's place or somewhere else on Nigger Hill.

While ordinarily malice is to be implied from the nature of a homicidal transaction and the circumstances attending its commission, yet in the instant case the state's testimony tends to show that premeditation and deliberation were absent.

It is our belief that the ends of justice—in so far as penalties can satisfy or appease justice—will be met by a sentence confining appellant in the penitentiary for 21 years.

The judgment is so modified; and, as modified, it is affirmed.